IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30430

Summary Calendar
_____


JOANN W. PIERCE,

                                            Plaintiff-Appellant,

NORTHBROOK PROPERTY & CASUALTY
INSURANCE COMPANY,

                                            Intervenor-Appellant,

                        versus

HOBART CORP., ET AL.,

                                            Defendants,


MARTIN MARIETTA CORPORATION,
a/k/a MARTIN MARIETTA MANNED
SPACE SYSTEMS,

                                            Defendant-Appellee.



_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(89-CV-2843-B)
_____

October 27, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

---

[*]Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that Rule, the Court has determined that this opinion should not be published.

Joann Pierce and Northbrook Property & Casualty Insurance Company appeal from the United States District Court's grant of summary judgment to Martin Marietta Corporation, holding that Martin Marietta is the statutory employer of Pierce. Under Louisiana's Workers' Compensation Act, statutory employers are immune from tort suits brought by individuals injured while acting the scope of their employment.[1] We have jurisdiction, 28 U.S.C. § 1291, and we now affirm.

I.

---

[1] Louisiana's Workers' Compensation Act provides in pertinent part:

> Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him.

LSA-R.S. 23:1061. In addition, such statutory employers are immune from suits brought by the covered employees:

> The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representative, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

LSA-R.S. 23:1032.

2

In 1978, the National Aeronautics and Space Administration contracted with Martin Marietta to build components of the space shuttle at the Michoud Assembly Facility. In 1982, the parties amended the contract to add to Martin Marietta's contractual obligations the responsibility of operating the Michoud facility according to the Facilities Operating Plan. Pursuant to the FOP, Martin Marietta was to "operate such cafeterias, dining room, kitchens and storerooms as necessary to serve the operations" and to "provide trained personnel to prepare and serve all food, food products, confections, non-alcoholic beverages and other products." Martin Marietta later contracted with Morrison's Custom Management to operate the cafeterias and perform Martin Marietta's food service obligations under the NASA contract.

On two, separate occasions in 1988, Pierce, an employee of Morrison's, allegedly slipped and fell while working at her job at the Michoud facility. Pierce filed suit in state court against Martin Marietta and Hobart Corporation, the manufacturer of the dishwater that allegedly leaked water onto the cafeteria floor causing Pierce to fall. Alleging diversity, Hobart removed the action to federal court. Northbrook intervened to recover the workers' compensation benefits it had paid to Pierce, and Pierce amended her complaint to name the United States, the owner of the Michoud facility, as an additional defendant. Hobart and the United States were subsequently dismissed from the suit.

The district court granted Martin Marietta's first motion for summary judgment, holding that, under Louisiana's Workers'

3

Compensation Act, Martin Marietta was Pierce's statutory employer since Morrison's was performing part of Martin Marietta's "trade, business, or occupation" at the time of the injury. However, finding a genuine issue of material fact existed whether Morrison's contract work for Martin Marietta was specialized -- an ingredient of the "trade, business, or occupation" test -- we vacated the summary judgment and remanded for further proceedings. Pierce v. Hobart Corp., 939 F.2d 1305 (5th Cir. 1991).

On remand, Martin Marietta again sought summary judgment, this time alleging that it was the statutory employer of Pierce under the "dual contract" doctrine. The district court twice denied summary judgment.

Upon consent of the parties, the case was referred to a magistrate judge for trial. At a preliminary conference, the magistrate judge agreed to reexamine whether Martin Marietta was the statutory employer of Pierce under the "dual contract" doctrine. Finding that no genuine issue of material fact existed, the magistrate judge granted summary judgment to Martin Marietta. This appeal followed.

## II.

Northbrook first claims that the district court applied the incorrect legal standard by failing to distinguish between contracts for the performance of services and contracts for the provision of services. Relying on Duvall v. Lake Kenilworth, Inc., 467 So.2d 850 (La. App. 1984), cert. denied, 472 So.2d 919

4

(La. 1985), and <u>Chauvin v. Gulf Coast Minerals, Inc.</u>, 509 So.2d 622 (La. App.), <u>cert. denied</u>, 512 So.2d 1175 (La. 1987), Northbrook argues that while the statutory employer defense applies where the contract is for the performance of services, the defense is not available where the principal's contract with the third party only requires it to provide services. We disagree.

<u>Duvall</u> held that "to have agreed to pay the cost of a service (e.g., electricity, telephone, pest control) . . . is not to have 'contracted to perform' a work" within the statute's meaning. 467 So.2d at 854 (emphasis omitted). Even if we were to agree with Northbrook that <u>Duvall</u>'s distinction between contracts to provide and contracts to perform correctly describes Louisiana law, we do not see how that fact advances Northbrook's argument. The district court correctly held that, to establish the "dual contract" statutory employer defense, Martin Marietta must show 1) that it entered into a contract with a third party, 2) that pursuant to that contract, work must be performed, and 3) that in order for Martin Marietta to fulfill its contractual obligation to perform the work, it entered into a subcontract for all or part of the work performed. <u>Gobert v. McDermott, Inc.</u>, 634 So.2d 873, 874-75 (La. App. 1993); <u>Duncan v. Balcor Property Management, Inc.</u>, 615 So.2d 985, 989 (La. App. 1993), <u>cert. denied</u>, 617 So.2d 936 (La. 1993). As the district court recognized, <u>Duvall</u>'s distinction between contracts to provide and contracts to perform is fully consistent with the second prong of

5

the inquiry requiring that work be performed pursuant to the terms of the contract.[2]  In short, the district court did not apply the incorrect legal standard to the dispute at hand.

Northbrook next argues that the district court erred in holding that no genuine issue of material fact exists that the food services provision of the NASA contract requires work to be performed by Martin Marietta.  Emphasizing the contract's use of the verb "provide", Northbrook contends that "the 'Cafeteria' is clearly set out as a service which Martin Marietta was not expected to perform and did not contract to perform but rather contracted to provide."

We reject Northbrook's contention.  That Martin Marietta promised it would "provide" trained personnel to operate the cafeteria does not signify that the contract did not obligate it to perform work.  See Chauvin v. Jefferson Parish Sch. Bd., 595 So.2d 728, 732 (La. App. 1992) (holding that contract requiring ACC to "provide and administer a program of treatment and/or services" obligated ACC to perform work).  The FOP stated that Martin Marietta was "responsible for the operation of cafeterias."  Moreover, Jim Cain, Martin Marietta's manager of contracts, testified in his deposition that the use of the word "provide" instead of "perform" did not have any particular significance, much less denote that Martin Marietta was not to

---

[2]     Offering even less support for Northbrook's argument, the Louisiana Court of Appeals in Chauvin recognized that the lower court had applied Duvall, distinguishing between contracts to perform and contracts to provide, but the court of appeals rested its decision on other grounds.  509 So.2d at 628.

perform the food services itself.  Stated another way, Martin Marietta, unlike the apartment owner in <u>Duvall</u>, was contractually bound to perform the service.  It did not, as was the case in <u>Duvall</u>, simply agree to pay the cost of a service which it was never obligated itself to provide.  <u>See</u> <u>also</u> <u>Benoit v. Grey Wolf Drilling, Inc.</u>, 520 So.2d 1104, 1107 (La. App. 1987) ("Unlike <u>Duvall</u>, Grey Wolf did not simply obligate itself to provide a service, it obligated itself to drill an oil and gas well."), <u>cert. denied</u>, 522 So.2d 566 (La. 1988).

In addition, noting that the FOP divides Martin Marietta's contractual obligations between "make" or "buy" duties, Northbrook argues that the FOP's categorization of the cafeteria as a "buy" duty creates a genuine issue of material fact by denoting that Martin Marietta never intended to perform the cafeteria services itself.  We disagree.  The FOP does not compel Martin Marietta to subcontract the cafeteria services.  Instead, "[t]he Make/Buy arrangement may be changed based on economic conditions at the time of subcontract expiration, contractual changes, availability of skilled personnel, etc."  In addition, Jim Cain stated that the make/buy determinations, which were originally made by Martin Marietta and not NASA, bore no particular significance and that Martin Marietta would not breach the contract if it were to perform any of the "buy" duties itself.  Indeed, under the terms of the FOP itself, Martin Marietta remained "responsible for the operation of cafeterias."

7

Moreover, even if NASA and Martin Marietta had contemplated at the time they negotiated the primary contract that a subcontractor would perform the food service duties, such intention is immaterial.  It is the nature and extent of the contractor's contractual duties, not the parties' intention at that time they negotiated the contract, that determines whether Martin Marietta performed work under the NASA contract.  Otherwise, a general contractor who did all its work through subcontractors would not qualify as a principal -- a proposition rejected by the Louisiana courts.  See Bradford v. Village Ins. Co., 548 So.2d 106 (La. App.) (holding contractor who employed only one person full-time and who customarily did most of its work through subcontractors was statutory employer of subcontractor's employee), cert. denied, 552 So.2d 396 (La. 1989).

## III.

We hold that there is no genuine issue of material fact that Martin Marietta contracted with NASA to operate the cafeterias at the Michoud facility, that it undertook to perform work under the terms of the contract, and that it contracted with Morrison's to perform its contractual duties.  Martin Marietta need demonstrate no more to qualify as the statutory employer of Joann Pierce.

AFFIRMED.

8